IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED
APR 15 2016
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

UNITED STATES OF AMERICA,

v. 15-CR-212-A

THOMAS BASS,

Defendant.

## PLEA AGREEMENT

The defendant, THOMAS BASS, and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.

## I. THE PLEA AND POSSIBLE SENTENCE

1. The defendant agrees to waive indictment and to plead guilty to a two-count Information which charges:

a. in Count 1, a violation of Title 21, United States Code, Section 841(a)(1) (possession with intent to distribute and distribution of marijuana), for which the maximum possible sentence is a term of imprisonment of 5 years, a fine of $250,000, a mandatory $100 special assessment, and a term of supervised release of at least 2 years and up to life; and

b. in Count 2, a violation of Title 18, United States Code, Section 1956(a)(1)(A)(i) (money laundering), for which the maximum possible sentence is a term of imprisonment of 20 years, a fine of $500,000, a mandatory $100 special assessment, and a term of supervised release of 3 years.

c. The defendant understands that the penalties set forth in this paragraph are the minimum and maximum penalties that can be imposed by the Court at sentencing.

2. The defendant understands that the Court may enter an order of community restitution in an amount not to exceed any fine imposed pursuant to Title 18, United States Code, Section 3663(c) and Sentencing Guidelines § 5E1.1(d).

3. The defendant understands that, if it is determined that the defendant has violated any of the terms or conditions of supervised release, the defendant may be required to serve in prison all or part of the term of supervised release, up to 4 years, without credit for time previously served on supervised release. As a consequence, in the event the defendant is sentenced to the maximum term of incarceration, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in ¶ 1 of this agreement.

## II. <u>ELEMENTS AND FACTUAL BASIS</u>

4. The defendant understands the nature of the offenses set forth in ¶ 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crimes:

With regard to Count 1 of the Information:

a. the defendant possessed a controlled substance;

b. the defendant knew that the defendant possessed a controlled substance; and

c. the defendant actually distributed or intended to distribute the controlled substance.

With regard to Count 2 of the Information:

a. the defendant conducted or attempted to conduct a financial transaction involving property constituting the proceeds of specified unlawful activity, namely, possession with intent to distribute, and distribution of, marijuana;

b. that the defendant knew that the property involved in the financial transaction was the proceeds of some form of unlawful activity; and

c. the defendant acted with the intent to promote the carrying on of the specified unlawful activity.

## FACTUAL BASIS

5. The defendant and the government agree to the following facts, which form the basis for the entry of the pleas of guilty including relevant conduct:

a. Beginning in or before July 2014, the exact date being unknown, and continuing until on or about September 4, 2015, in the Western District of New York, the defendant, THOMAS BASS, regularly purchased bitcoins with United States currency that was the proceeds of unlawful marijuana distribution, then used such bitcoins to purchase bulk quantities of marijuana for further distribution from one or more sources in the State of California.

b. Bitcoin is a "virtual" currency, that is, a medium of exchange that operates like a currency in some primarily Internet-based environments, but does not have all the attributes of real currency, such as legal tender status. Bitcoin is a "convertible" virtual currency in that it has an equivalent value in real currency and acts as a substitute for real currency. This equivalent value is not determined by any authority or entity; rather, it floats on the open market, with its price subject to variations in global supply and demand. Between July 2014 and September 2015, the trading value of a bitcoin fluctuated between approximately $200 and $600 in United States dollars.

c. Lacking physical manifestation, bitcoins exist solely as entries on the "blockchain" ledger, which records every Bitcoin transfer ever made.

The blockchain is updated by "miners" who provide the computing power to confirm new Bitcoin transactions and who are paid a miner's fee in bitcoins for every new block of transactions that is added to the ledger. The blockchain is then updated for all Bitcoin users. Thus, in the decentralized, self-perpetuating, global Bitcoin network, every confirmed transfer necessarily affects interstate and foreign commerce.

d. The blockchain records, among other data, the public address to which a bitcoin was sent. A public address is simply an alphanumeric string and does not identify its owner. A bitcoin is "possessed," that is, control over it is exercised, by whoever has the corresponding private key that is necessary to transfer bitcoins at a public address. Bitcoin users generally maintain these public-private key combinations in virtual wallets that are typically hosted on Internet websites or servers. Different websites have different requirements of their end users in opening accounts; some websites verify identity in much the same manner as a bank, while others require no verification.

e. Unlike bank accounts and account numbers, wallets are not limited to a single public address. A wallet's owner can change the public address with every transaction. Therefore, no record of transactions associated with a particular wallet, and no pattern of transactions that may tend to identify the wallet's owner, can be readily gleaned from the blockchain alone. This decentralized system for maintaining bitcoins and Bitcoin transactions affords Bitcoin users far less traceability and far greater anonymity than traditional methods of transmitting money.

f. Starting in July 2014, Bass regularly purchased bitcoins from a known Bitcoin exchanger in the Western District of New York (hereinafter "Exchanger-1"). Bass and Exchanger-1 typically negotiated pricing through wire and electronic communications, then met in person to complete their transactions. Exchanger-1 sometimes "fronted" bitcoins to Bass, that is, transferred the bitcoins to Bass before receiving payment. Bass purchased the bitcoins using the profits of unlawful marijuana sales, with the intent of using these bitcoins to purchase additional marijuana for sale.

g. Among the transactions was a payment of approximately $4,883 on November 5, 2014, by Bass to Exchanger-1 for two transfers totaling 12.7 bitcoins. On November 4, 2014, Bass had provided to Exchanger-1 the following public address:
1r7xUFmwc26nbo5cNPDcyeVHGV7VzMkj4
Exchanger-1 transferred, at Bass's request, 6.5 bitcoins to this address, charging Bass $2,450. On November 5, 2014, before Bass paid for this

transfer, Bass requested a transfer of 6.2 bitcoins to the following public address:
14x3HeZFi9s6GowUpEQTJpRHRL6qnHkFah
Exchanger-1 charged Bass $2,433 for this second transfer, then met Bass on Grand Island, New York, to receive payment for both transfers. In this manner, by March 2015, Bass had purchased bitcoins totaling approximately $80,000 from Exchanger-1.

h. Bass continued to purchase bitcoins from Exchanger-1 with proceeds of unlawful marijuana distribution after March 2015. On September 4, 2015, Bass attempted to take delivery of a U.S. Postal Service Priority Mail package, sent from California, that contained approximately one pound of high-grade marijuana. This quality of marijuana was worth approximately $2,500 per pound, wholesale. A search warrant execution at Bass's residence revealed more marijuana, paraphernalia for distribution of marijuana, and used Postal Service boxes and packaging material consistent with the intercepted package. On September 8, 2015, federal agents intercepted another Priority Mail package for Bass that also contained approximately one pound of high-grade marijuana. Such receipt of two pounds of high-grade marijuana, worth approximately $5,000 wholesale, within one week is consistent with possession with intent to distribute and not with personal use.

i. Bass admitted to agents that he regularly purchased bitcoins from Exchanger-1 and that he used these bitcoins to purchase marijuana, including the two intercepted shipments, from an Internet vendor. Bass explained that he bought his marijuana from said vendor mainly on a particular black-market website that used Bitcoin and other mechanisms to enhance anonymity for end users.

j. At least 20 kilograms but less than 40 kilograms of marijuana is the amount involved in the defendant's relevant conduct encompassed in the Information which could be readily proven by the government against the defendant.

## III. SENTENCING GUIDELINES

6. The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).

## BASE OFFENSE LEVEL

7. The government and the defendant agree that Guidelines §§ 2D1.1(a)(5), 2D1.1(c)(12), and 2S1.1(a)(1) apply to the offenses of conviction and provide for a base offense level of **16**.

## SPECIFIC OFFENSE CHARACTERISTICS
## U.S.S.G. CHAPTER 2 ADJUSTMENTS

8. The government and the defendant agree that the following specific offense characteristics do apply:

a. the two-level decrease pursuant to Guidelines § 2D1.1(c)(17) (safety valve); and

b. the two-level increase pursuant to Guidelines § 2S1.1(b)(2)(B) (conviction under Title 18, United States Code, Section 1956).

## ADJUSTED OFFENSE LEVEL

9. Based on the foregoing, it is the understanding of the government and the defendant that the adjusted offense level for the offenses of conviction is **16**.

## ACCEPTANCE OF RESPONSIBILITY

10. At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level downward adjustment of Guidelines § 3E1.1(a) (acceptance of responsibility) and further agrees to move the Court to apply the additional one (1) level downward adjustment of Guidelines § 3E1.1(b), which would result in a total offense level of **13**.

## CRIMINAL HISTORY CATEGORY

11. It is the understanding of the government and the defendant that the defendant's criminal history category is **I**. The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase. The defendant understands that the defendant has no right to withdraw the pleas of guilty based on the Court's determination of the defendant's criminal history category.

## GUIDELINES APPLICATION, CALCULATIONS AND IMPACT

12. It is the understanding of the government and the defendant that, with a total offense level of **13** and criminal history category of **I**, the defendant's sentencing range would be a term of imprisonment of **12** to **18** months, a fine of **$3,000** to **$500,000**, and a period of supervised release of **2** to **3** years. Notwithstanding this, the defendant understands that at sentencing, the defendant is subject to the minimum and maximum penalties set forth in ¶ 1 of this agreement.

13. The government and the defendant agree to the Sentencing Guidelines calculations set forth in this agreement and neither party will advocate or recommend the application of any other Guideline, or move for any Guidelines departure, or move for or recommend a sentence outside the Guidelines, except as specifically set forth in this agreement. A breach of this paragraph by one party will relieve the other party of any agreements made in this plea agreement with respect to sentencing motions and

recommendations. A breach of this paragraph by the defendant shall also relieve the government from any agreements to dismiss or not pursue additional charges.

14. The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the pleas of guilty based on the sentence imposed by the Court.

## IV. STATUTE OF LIMITATIONS

15. In the event the defendant's pleas of guilty are withdrawn, or convictions vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees not to assert the statute of limitations as a defense to any other criminal offense involving or related to the unlawful possession, manufacture, distribution or importation of controlled substances and money laundering which is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty pleas or vacating of the convictions becomes final.

## V. GOVERNMENT RIGHTS AND RESERVATIONS

16. The defendant understands that the government has reserved the right to:

a. provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

b. respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

c. advocate for a specific sentence consistent with the terms of this agreement including the amount of a fine and the method of payment; and

d. modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this agreement, regarding the recommendation or factor.

17. The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

## VI. APPEAL RIGHTS

18. The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 12, above, notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence.

19. The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

20. The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 12, above, notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

## VII. COOPERATION

21. The defendant will cooperate with the government by providing complete and truthful information regarding the defendant's knowledge of any and all criminal activity, whether undertaken by the defendant or others, in any way involving or related to the unlawful possession, manufacture, distribution or importation of controlled substances, and to money laundering. The defendant's cooperation shall also include submitting to interviews by government attorneys and agents, as well as testifying truthfully and completely before grand juries and at such pre-trial, trial, and sentencing proceedings as the government shall deem necessary.

22. The defendant further agrees to provide proactive cooperation to the government regarding individuals involved in criminal activity involving the unlawful possession, manufacture, distribution or importation of controlled substances and money laundering. The defendant agrees to comply with all reasonable instructions of law enforcement agents in this regard.

23. In exchange for the defendant's pleas of guilty and cooperation as set forth in this agreement, the defendant will not be prosecuted by the Office of the United States Attorney for the Western District of New York for any other federal criminal offenses committed in the Western District of New York in any way involving or related to the unlawful possession, manufacture, distribution or importation of controlled substances, and to money laundering, committed up to the date of this agreement and about which the defendant provides complete and truthful information. Such a promise of non-prosecution does not foreclose any prosecution for an act involving murder, attempted murder, or act of physical violence against the person of another, or conspiracy to commit an act of violence.

24. Further, no testimony, statements or tangible objects provided by the defendant in compliance with this agreement (or any information directly or indirectly derived therefrom) will be used against the defendant in any criminal case, except a prosecution for perjury or making false statements.

25. Upon condition that the defendant has fully complied with all terms and conditions of this agreement, should the government determine that the defendant has

provided substantial assistance in the investigation or prosecution of other persons who have committed offenses, the government will move the Court at sentencing to depart downward from the Guidelines as provided for in Guidelines § 5K1.1. The defendant understands that the decision to make such a motion is within the sole discretion of the government and that the decision to grant such a motion, and the extent of any downward departure, are matters solely within the discretion of the Court.

26. This agreement does not preclude the prosecution of the defendant for perjury or making false statements in the event the defendant testifies falsely or provides false information to the government. This agreement is not contingent upon the filing of charges against, the return of an Indictment against, or the successful prosecution of, any person or entity.

27. It is a condition of this agreement that, up through the date of the defendant's sentencing, the defendant shall commit no further crimes. It is also a condition of this agreement that the defendant must, at all times, give complete, truthful and accurate information and testimony and not withhold information from the government or refuse to testify truthfully and completely. Should the defendant be sentenced prior to the completion of the defendant's cooperation with the government, the defendant's obligation to comply with the cooperation provisions of this agreement extends past sentencing.

28. In the event the government believes the defendant has violated any of the conditions of the "Cooperation" section of this agreement, the government, in addition to

its other rights as set forth in the "Cooperation" section of this agreement, reserves the right: (a) to modify any recommendation the government agreed to make in a motion pursuant to Guidelines § 5K1.1; and (b) to petition the Court, before or after sentencing, for an order declaring that the defendant has breached the "Cooperation" section and relieving the government of its obligations under this section.

29. In the event the government petitions the Court to declare that the defendant has breached the "Cooperation" section of this agreement, whether the defendant has violated any of the conditions of the "Cooperation" section shall be determined by the Court in an appropriate proceeding at which any disclosures and documents provided by the defendant shall be admissible and at which the government shall be required to establish any violation by a preponderance of the evidence. In order to establish any violation by the defendant, the government is entitled to rely on statements and information given by the defendant pursuant to this agreement.

30. If the "Cooperation" section of this agreement is declared breached by the Court:

a. the defendant shall thereafter be subject to prosecution for any federal criminal violations of which the government has knowledge, including but not limited to, perjury and obstruction of justice;

b. the government may withdraw any motion filed pursuant to Sentencing Guidelines § 5K1.1 and/or Rule 35(b);

c. the defendant has no right to withdraw the pleas of guilty;

d. the defendant shall waive all rights under Fed. R. Crim. P. 11(f), Fed. R. Evid. 410 and Sentencing Guidelines § 1B1.8 and the defendant

expressly agrees that all statements, testimony and tangible objects provided by the defendant (with the exception of statements made in open court during guilty plea proceedings), whether prior or subsequent to this agreement, can be used directly and indirectly in any and all criminal proceedings against the defendant; and

e. the defendant agrees that any charges that were dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government. Furthermore, the defendant agrees not to assert the statute of limitations as a defense to any criminal offense involving or related to the unlawful possession, manufacture, distribution or importation of controlled substances and money laundering which is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the Court's order declaring the agreement breached by the defendant becomes final.

31. At the time of sentencing, the government will make the nature and extent of the defendant's compliance with this agreement known to the Court. The government and the defendant will request that sentencing be adjourned until full satisfaction by the defendant of the terms of this agreement. In the event the defendant is sentenced prior to the completion of the defendant's cooperation with the government, the government reserves the right to modify any recommendation to be made by the government at sentencing pursuant to Guidelines § 5K1.1.

32. The defendant's attorney is expressly permitted to be present at any time the defendant is questioned or interviewed by government agents regarding the matters set forth in this agreement.

## VIII. TOTAL AGREEMENT AND AFFIRMATIONS

33. This plea agreement represents the total agreement between the defendant, THOMAS BASS, and the government. There are no promises made by anyone other than those contained in this agreement. This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

WILLIAM J. HOCHUL, JR.
United States Attorney
Western District of New York

BY: ______________________________
WEI XIANG
Assistant United States Attorney

Dated: April 15, 2016

I, THOMAS BASS, have read this agreement, which consists of 15 pages. I have had a full opportunity to discuss this agreement with my attorney, Dominic H. Saraceno, Esq. I agree that it represents the total agreement reached between myself and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my pleas of guilty. I fully agree with the contents of this agreement. I sign this agreement voluntarily and of my own free will.

______________________________
THOMAS BASS
Defendant

Dated: April 15, 2016

______________________________
DOMINIC H. SARACENO, ESQ.
Attorney for the Defendant

Dated: April 15, 2016